Mr. Justice Thacher
delivered the opinion of the court.
The probate court of Yalabusha county refused to admit to probate a certain instrument in writing purporting to be the nun-cupative will of James Parkison, deceased.
The facts were as follows: James Parkison died at his own house a little after midnight of a certain day. About three o’clock, P. M. previous to his death, Dr. Daniel Stanford arrived at his house. Late in the same evening Dr. Stanford informed him that he probably would not live till the next morning. Soon after he and his wife had some conversation about the disposal of his property, and Dr. Stanford retired from the room in order to afford them a free opportunity to converse. Upon his return, *677 in a few minutes, the deceased stated to him that he wished to make his will. Dr. Stanford testifies that he understood him to mean that he wished him to write his will in regular form, but, believing him to be'sinking very fast, he informed him that he did not think he could live long enough for that purpose, but that Mr. Spring and Mr. Chamberlin were present, competent witnesses, to whom he could state what disposition he wished made of his property. Upon this, and without further remark, the deceased stated his testamentary wishes. Dr. Stanford then left the room, but soon returned and stated to the deceased that his will would not probably be good and valid, unless he named his other brothers; whereupon he said, he would give them each five dollars. This also occurred in the presence of Mr. Spring and Mr. Chamberlin. At the time, a memorandum of the testamentary wishes of the deceased was taken in pencil by Dr. Stanford, which was afterwards written in ink, and signed by himself, Spring and Chamberlin, but the memorandum was not seen by the deceased, nor was it read to him. Mr. Spring testifies that he was present when the deceased said that he wished to dispose of his property, and wished Dr. Stanford “ to fix it.” He further testifies, that he did not hear the deceased call on any one to witness what he was about to say, and that it was only in consequence of Dr. Stanford’s remark, that “ here were Mr. Spring and Mr. Chamberlin, competent witnesses, standing by,” and the deceased then speaking the words in his hearing, that he considered himself a witness. In other respects, Mr. Spring corroborates the testimony of Dr. Stanford. Mr. Cham-berlin proves that the deceased desired Dr. Stanford to make or draw a will for him; and in other respects confirms the testimony of Dr. Stanford and Mr. Spring.
There is sufficient proof that the deceased was of a sound mind and disposing memory at the time of this transaction.
The only point presented is, whether the statutory requisite to establish a nuncupative will, to wit, that, “it be proved by two witnesses that the testator called on some person present to take notice or bear testimony, that such is his will, or words of the like import,” is complied with in this instance.
*678 In the first place, the memorandum taken by Dr. Stanford not having been read to the deceased, nor approved by him, is too imperfect to be established as a written will. Mason v. Dunman, 1 Munf. 456.
In one point of view there was a literal compliance with the statute, for, both Spring and Chamberlin testify that the deceased wished Dr. Stanford to make his will, and immediately afterwards, in the presence and hearing of those witnesses, he made a statement to Dr. Stanford of his testamentary wishes and intentions. But the main object of the special requirement of the statute to bear witness, the rogatio testium, is to distinguish between a testamentary act by one in extremis, and loose declarations and casual conversations as to the disposition of his property, and to prevent the latter from being passed off as testamentary. The statuté does not require the testator, if he may so be styled, to call upon the two witnesses to take notice that such is his will, nor to call upon them to witness that he calls upon some person present to take notice that such is his will. . They need but testify to the fact, that the testator called upon some person present to take notice, hear testimony, or otherwise be informed and understand that such is his will. 'What then is the design of the statute more than to.establish by two witnesses that the animus testandi existed in the mind of the person at the time he is supposed to have called upon a person present to bear witness to his disposal of his property; to distinguish between his own deliberate testamentary wish and intention and the wish of those who surround the person so in extremis. ■
In this case the testamentary capacity of the deceased, his animus testandi at the time of the alleged nuncupation'^ clearly shown. The deceased wished to make a will; he wished Dr. Stanford to make it; he proceeded to make his testamentary, disposal of his property after he was informed by Dr. Stanford of th'e shortness of the time probably left to him to live; and he thought himself making a will. These facts are established by the witnesses. We think it a good nuncupative will, such as was entitled to admission to probate.
*679 The decree of the probate court is reversed, and the cause' remanded with directions to that court to receive the said will to probate.